IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–02477–KMT

YALE CONDOMINIUMS HOMEOWNER'S ASSOCIATION, INC.,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant.

---

**ORDER**

---

This matter is before the court on "Defendant American Family Mutual Insurance Company, S.I.'s, Motion for Summary Judgment" ("MSJ") filed December 15, 2020. [Doc. No. 51.] "Plaintiff's Response to Defendant's Motion for Summary Judgment" ("Resp.") [Doc. No. 60] and "Plaintiff's Response to Defendant's Statement of Undisputed Facts and Plaintiff's Statement of Additional Material Facts ("Deft.UF") [Doc. No. 61] were filed January 18, 2021. Plaintiff also contemporaneously filed an "Affidavit of Counsel" [Doc. No. 64] with 18 attached exhibits and an "Affidavit of Donald Joseph James, Jr." of DiRito Roofing and Claims. [Doc. No. 63.] "Defendant American Family's Reply in Support of Motion for Summary Judgment [Doc. 51]" (Reply) [Doc. No. 66] was filed on February 1, 2021.

*FACTS*

Plaintiff is a three-building homeowners association whose properties are known as 712 Yale Place, 716 Yale Place and 720 Yale Place in Canon City, Colorado. (MSJ, Undisputed Facts ["MSJ-UF"], ¶¶ 1-2.) At all relevant times the properties, with their 21-year-old roofs, were insured by Defendant American Family Mutual Insurance Company, S.I ("American Family"). (MSJ-UF at 3-4.) Plaintiff alleges its three buildings were damaged by hail and wind from a storm that occurred on July 23, 2018. (Complaint [Doc. No. 3], ¶¶ 9, 12; MSJ-UF, ¶ 15.)

On or about August 15, 2018, Plaintiff requested that Jonna DiRito of DiRito Roofing & Claims inspect the roofs on the three buildings. Ms. DiRito inspected the property on September 25, 2018. (MSJ-UF, ¶¶ 7, 12.) Contrary to the allegations in the Complaint (*see* Compl. ¶ 12), it is undisputed that American Family was notified about potential storm damage to the buildings on September 28, 2018, when Plaintiff first contacted its insurance agent, John Greene.[1] Plaintiff filed an official hail damage claim with American Family on October 8, 2018. (MSJ-UF at 14, 15; Deft.UF, ¶¶ 14, 16.)

On October 12, 2018, four days after the claim was filed, American Family inspected the property with its adjuster, Justin Dawson, in the presence of Jonna DiRito. (MSJ-UF, ¶ 17.) Plaintiff alleges that the American Family adjuster made only a cursory inspection of the three roofs (although it is not disputed that he physically climbed up a ladder and personally visually

---

[1] Jeff Mueller, president of HOA Plaintiff, testified that on September 28, 2018, he contacted insurance agent Greene and said, "Had a company do an inspection at the Yale condos for hail. Sounds like we have an issue. Not sure how to proceed but they will – but will let you know what they tell me." (Aff. of Counsel, Ex. C, [Doc. No. 64-3] Deposition of Jeff Mueller taken July 17, 2020 ("Mueller Depo."), at 123:2-16.) Mr. Greene allegedly responded immediately and said, "Keep me posted and I will get the claim open for you and then get an adjuster scheduled." (*Id*.)

2

inspected each roof), and that he was rude and unprofessional, accusing the Plaintiff of "cheating" and trying to get an unwarranted "free roof." (Compl., ¶¶ 14-16.) A coverage position letter was sent to the Plaintiff on October 23, 2018. (Aff. of Counsel, Ex. A, at 69-71.) American Family informed Yale that its adjuster had not observed hail damage to the 3-tab asphalt roof coverings, but did observe normal wear, tear, and deterioration due to age. (MSJ-UF, ¶ 22.) American Family acknowledge hail damage on the metal vent caps on all three buildings and on one skylight located at 720 Yale Place. (*Id.*) American Family explained to Plaintiff that it opened a second claim for wind damage observed at the property but which American Family determined occurred prior to the July 2018 storm. (*Id.*) American Family advised that there was a large amount of peeling paint on the buildings' metal siding, which appeared to be attributable to improper prep work and improper type of paint used, not damage from the July 2018 hailstorm. (*Id.*) (*See* Aff. of Counsel, Ex. A, [Doc. No. 64-1] Dawson itemized damage assessments, at 2-39.)

Also on October 23, 2018, fifteen days after the storm damage claim was filed, American Family paid Plaintiff for repairs associated with the hail damage identified in detail on the three buildings, and on October 26, 2020, American Family paid Plaintiff for repairs attributed to specified wind damage on the three buildings. (MSJ-UF, ¶¶ 23-24.)

Following American Family's payments, Yale requested a reinspection of its buildings and reported Justin Dawson's alleged unprofessional conduct to American Family. (MSJ-UF ¶ 26.) American Family had not received any prior complaints about this adjuster either before or after the inspection on the Yale properties. (MSJ-UF, ¶ 27). Nevertheless, American Family agreed to a reinspection with a different adjuster and an engineer retained at American Family's

expense.  (MSJ-UF ¶ 28.)  Michael Morrison, believed by Yale to have been an inspector at a higher level within American Family than Dawson, was assigned as the new adjuster.  (Aff. of Counsel, Ex. C, Mueller Depo. at 151:23 to 152:5.)  On November 6, 2018, Mr. Morrison and the engineer, John Peterson of Rivet Engineering, inspected the three buildings again along with Jonna DiRito.  (MSJ-UF ¶ 29-30.)  The second inspection lasted approximately four hours.  (MSJ, Ex. G, "Claim Denial Rebuttal: DiRito Roofing & Claims" ("DiRito Rebuttal") [Doc. Nos. 51-7 and 51-8] at 7, "The inspection lasted almost 4 hours before I left.")  It is undisputed that Rivet Engineering found

> that the light-gage metal vents on the property were damaged by hail. Rivet determined that the roof shingles and siding paint were not damaged by hail. Rivet did not observe hail impacts to the shingles. Rivet observed that the shingles on the property's south-facing slopes had craze cracking consistent with thermal fluctuations, indicating limited ventilation and/or age-related deterioration. Rivet observed a few isolated, irregularly-shaped blemishes and regions of missing granules and smooth matting consistent with poor adhesion of the granules during manufacturing, occurring primarily on the northern slope (opposite from the hail storm directionality).

(MSJ-UF ¶ 31; MSJ, Ex. Q, Rivet Report; Aff. of Counsel, Ex. A at 40-68.)  American Family did not offer any additional compensation to Plaintiff subsequent to the second inspection and the Rivet Report, finding that the Plaintiff had been fully compensated for repairs attributable to covered losses on October 23 and 26, 2018.  Plaintiff was offered an opportunity to retain another contractor and/or engineer to dispute Rivet's findings but it chose not to do so.  (MSJ, Ex. S, [Doc. No. 51-18] at 5, "December 10, 2018 email from Michael Morrison to Jeff Mueller" and at 3, "December 11, 2018 email from John A. Greene to Jeff Mueller.")

Approximately seven months later, on May 10, 2019, Jonna DiRito submitted the DiRito Rebuttal.[2] (MSJ-UF ¶ 35-37.) DiRito's Rebuttal states as to Building 3, 720 Yale Place:

> Areas that I reviewed with storm damage:
>
> 1. Siding, excessive loss of paint and the appears of small dents
> 2. Window Screens, throughout the complex several areas show screen stretching from hail and winds, holes in screens and dents on screen frames mainly in the open areas with minimal protection
> 3. Fascia damage, again mainly to the back side in an upward sweeping motion indicative of wind direction and small hail
> 4. Gutter damage and dings, mostly on building 3 in the open areas
> 5. Soft wood damage on stairs and Steps showing hail hits and paint chipping
> 6. Roofing: Building 3,
>      a. Excessively loose shingles from wind fatigue allowing potential water penetration to the attic
>      b. Extreme granule loss promoting premature shingle life, also large piles of granules in gutters
>      c. Damage on all soft metals (vents, fascia, and drip edge, and drip caps, many showing more than 10 hits)
>      d. Various, random holes in shingles promoting internal water shedding and potential leaking
>      e. Hail damage on Shingles, small to medium typical for the Fremont County area
>      f. Damage to Ridge Cap, possibly allowing moisture to enter attic
>      g. Damage to Skylight documenting at least 8 hits, 2 that broke the glass

[Doc. No. 51-7 at 4.] Plaintiff did not provide Defendant with any repair or replacement estimate based on Ms. DiRito's findings nor did it demand a specific sum to be paid as a result of Ms. DiRito's observations. (MSJ-UF, ¶ 44.) Ms. DiRito has not submitted a specifically itemized damage assessment other than the pictures and commentary which are appended to the DiRito Rebuttal.

---

[2] The DiRito Rebuttal was later tendered again as Ms. DiRito's expert report pursuant to Fed. R. Civ. P. 26. (See "Defendant American Family Mutual Insurance Company, S.I.'s Motion to Exclude Jonna DiRito Pursuant to Fed. R. Evid. 702, 403" [Doc. No. 54], Ex. A.)

On June 19, 2019, American Family advised Plaintiff it had reviewed the DiRito Rebuttal but that, based on the findings of its two inspections performed by two different adjusters and the engineer's report, it did not agree that the damage sustained in either the wind or the hail event warranted full roof replacement. (MSJ-UF ¶ 42.) American Family reiterated that it had agreed that there was damage attributable to both the July and April 2018 storms and specified covered damages were observed by the inspections undertaken by Mr. Dawson and Mr. Morrison, as well as engineer Mr. Peterson. American Family reminded Plaintiff that payment pursuant to the policy had already been made for repairs on that claim.

On July 30, 2019, this lawsuit was filed in Fremont County District Court; the action was removed to this Court on August 30, 2019. As of the date of the filing of the Motion, no storm damage repair has been effectuated at any of the three buildings. (MSJ-UF, ¶ 46.)

The original Complaint brought three claims: Count 1, Breach of Contract; Count 2, Fraudulent Misrepresentation and Deceit, and; Count 3, Insurance Bad Faith.[3] On May 18, 2020, the court dismissed Plaintiff's Count 2 for fraudulent misrepresentation and deceit. (Doc. No. 37.) Defendant's motion seeks judgment in its favor on the remaining two counts.

---

[3] The Complaint references "C.R.S. 1-3-115" as the underlying statutory provision for its bad faith claim. (Compl. at ¶ 50.) The court assumes that Plaintiff intended the claim to be considered pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law. *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160

(10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only.  *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  However, this standard does not require the court to make unreasonable inferences in favor of the non-moving party.  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).  The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.  *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### A.  *Breach of Contract*

Plaintiff alleges that Defendant breached the terms of its insurance policy by failing to pay the full value of its claim for damages in connection with a hail and wind storm in July 2018. Under Colorado law, the required elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages suffered by the plaintiff as a result of the defendant's breach.  *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).  Here, the parties do not dispute the existence of a contract or Plaintiff's performance, and therefore, elements one and two are satisfied for these purposes.  The only issue to be considered with

respect to summary judgment on the breach of contract claim is whether Plaintiff can prove that Defendant failed to perform under the terms of the insurance policy.

The insurance policy covers direct physical loss or damage from a covered cause of loss. (MSJ, Ex. A, Doc. No. 51-1, § I.A.1.) The parties do not dispute that both wind and hail are covered causes of loss. The policy does not cover items listed in the Exclusions section, Paragraph B, or if limited by Paragraph 4 "Limitations." (*Id*.) The Exclusions sections states,

> B. Exclusions
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
> …
>     l.    Other Types Of Loss
>         (1) Wear and tear;
>         (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>         (3) Smog;
>         (4) Settling, cracking, shrinking or expansion,
>         (5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;
>         (6) Mechanical breakdown. including rupture or bursting caused by centrifugal force.
> …
>
> 3. We will not pay for loss or damage caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>     c. Negligent Work
>     Faulty, inadequate or defective:
>         (1) Planning, zoning, development, surveying, siting;
>         (2) Design, specifications, workmanship. repair, construction, renovation, remodeling, grading, compaction;
>         (3) Materials used in repair, construction, renovation or remodeling; or
>         (4) Maintenance; of part or all of any property on or off the described premises.

(*Id.* at § 1.B.)  Further, Section I.E.9 of the policy, within the Unmatched Property Damage Exclusion Endorsement and Appraisal Changes, excludes damages solely because of mismatching between undamaged material and new material used to repair or replace damaged material.  (*Id.* at Doc. No. 51-1 at 51.)

In Colorado, the interpretation of an insurance contract is a question of law, to which traditional principles of contract interpretation apply. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005).  A contract claim is brought to determine damages when one of the parties did not receive the benefit of the contract.  "The root purpose of a contract remedy is 'to place the plaintiff-promisee in as good a position as [it] would have occupied had the defendant-promisor not breached the contract.' "  *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018) (quoting *In re Carvalho*, 335 F.3d 45, 51 (1st Cir. 2003)).  Such damages are known as "expectation damages," and in an action for breach of contract, "expectation damages are the norm."  *Spring Creek*, 887 F.3d at 1026 (citing *Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 337 (Colo. 2000)).

Pursuant to paragraph 33 of the Complaint, Plaintiff claims that "American Family . . . breached its contractual duties by failing to fully compensate Yale for covered losses."  Clearly there are disputed issues of material fact concerning whether the Plaintiff received the benefit of its contract as intended – in other words, whether American Family correctly evaluated the evidence before it at the time in reaching the conclusion that it was not obligated to repair or replace all or part of the asphalt tiles on the roof (other than those attendant to the skylight or damaged by wind in April 2018 for which it had already accepted responsibility) or fix damage beyond what it already has paid for.  There are significant issues of disputed fact over whether

imperfections in Plaintiff's roofs on the three buildings observed by all the inspectors and by the engineer were caused by hail or wind or whether they were caused by un-covered factors such as age. There are also disputed facts concerning whether hail and wind on July 23, 2018 caused other damages to the buildings, including *inter alia* damage to siding, paint, window frames and window screens, facia, soft wood and gutters. Defendant has obtained two insurance adjuster reports and an engineer's report which all state there was no hail damage to the asphalt shingles on any of the three roofs, while Plaintiff has one independent inspector who claims that there was significant hail damage to the asphalt shingles on all three buildings as a result of "hail, extensive rain, and high winds cumulatively and independently during the summer to fall 2018." (DiRito Rebuttal at 4.) The adjustors and the engineer disagree with Plaintiff's inspector about whether imperfections in the shingles were caused by blistering and age, or whether the divots or holes were caused by hail strikes, and if they were caused by hail strikes, whether those hail strikes happened on or about July 23, 2018 as claimed. There is undisputed evidence that up to 60+ asphalt shingles were damaged by wind at some point, although Plaintiff disputes Defendant's experts' conclusion that a wind event with sufficient strength to cause the damages could only have happened on April 17, 2018, not on July 23, 2018.[4] The parties' underlying central dispute is, of course, whether sufficient damage to the asphalt shingles occurred on any day in 2018, by either wind or hail, to justify replacing completely the shingles on all three buildings.

Based on the contested evidence, summary judgment on the contract claim is inappropriate. *Anderson,* 477 U.S. at 249; *Tolan,* 572 U.S. at 656.

---

[4] This finding resulted in Plaintiff being assessed a separate and additional deductible.

11

But that is not the end of the analysis. In this case, as in most insurance cases, a second claim inherent in any contract is based on tort liability for breach of the duty of good faith and fair dealing. All contracts carry an implied duty of good faith and fair dealing, which can give rise to tort claims for bad faith breach of a contract. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004) (explaining that insurance contracts are unique, in that "an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort"); *see Baumann v. Am. Family Mut. Ins. Co.*, No. 11-CV-00789-CMA-BNB, 2012 WL 122850, at *3 (D. Colo. Jan. 17, 2012). Paragraph 34 of Plaintiff's Complaint sets forth such a claim.

The tort liability inherent in a breach of contract claim is subject to the same analysis as a common law or statutory tort claim for insurance bad faith. *See Williams v. Auto-Owners Ins. Co.*, Case No. 12-cv-00999-MSK-CBS (D. Colo. March 25, 2014) (explaining that "all three claims [contract breach of good faith and fair dealing, common law bad faith, and statutory bad faith]. . . share a common element" that require a plaintiff to establish that the insurer's failure to pay under an insured's policy "immediately and in full, was unreasonable and bad faith conduct"). Therefore, to the extent that Plaintiff is alleging breach of contract for breach of the implied contractual duty of good faith and fair dealing, summary judgment in favor of Defendants is granted, for the same reasons set forth in Section B herein.

### B.     *Common Law and Statutory Bad Faith Claims*

Although not correctly cited in the Complaint as noted *infra*, Plaintiff appears to assert bad faith claims under his contract and a claim for unreasonable delay or denial of insurance

benefits, which is a statutory penalty under §§ 10-3-1115 and 10-3-1116 of the Colorado Revised Statutes.  Plaintiff alleges, specifically, that

> a. American Family failed to give equal consideration to Yale's interests;
> b. American Family failed to timely investigate Yale's claims;
> c. American Family failed to conduct a reasonable investigation of Yale's claims;
> d. American Family primarily sought evidence that would defeat Yale's claims;
> e. American Family unreasonably delayed or withheld Yale's benefits;
> f. American Family failed to attempt in good faith to effectuate prompt, fair, and equiptable (sic) settlement of claims after American Family's liability became reasonably clear;
> g. American Family failed to pay undisputed losses to gain leverage over disputed claims;
> h. American Family compelled Yale to initiate litigation to recover amounts due under its policy;

(Compl. ¶ 47.)

Defendant moves for summary judgment on all bad faith allegations, contending that "Plaintiff's bad faith and unreasonable delay/denial claims fail because Plaintiff cannot establish evidence of unreasonable conduct, and American Family's application of policy provisions and reliance on a licensed engineer was reasonable as a matter of law." (MSJ at 2.)

The court first notes that paragraph 47(g) is completely unsupported by any facts either disputed or undisputed.  The undisputed evidence shows that American Family paid the *undisputed* amounts of the two claims (wind and hail) within only a few weeks of the claim filing.  Additionally, as to the allegations in paragraph 47(a), Colorado law imposes a duty on an insurer to fairly consider an insured's interests and potential personal liability, in addition to its own interests.  *Lira v. Shelter Ins. Co.*, 903 P.2d 1147, 1150 (Colo. App. 1994), *aff'd,* 913 P.2d 514 (Colo. 1996).  However, outside of its conclusory allegation, the Plaintiff has put forth no evidence whatsoever to support a finding that the insurance company did not give equal

13

consideration to Yale's interests. Yale's designated inspector was allowed to and did participate in every inspection and the Defendant encouraged Plaintiff to bring in yet another contractor or engineer to challenge the conclusions of those held by the adjustors and engineer hired by American Family. (MSJ, Ex. S [Doc. No. 51-18] at 3, 5.) Plaintiff chose not to do that. (Mueller Depo. at 136:15-21.) Therefore, the court finds that neither subsections (a) or (g) are supported by any evidence, and Defendant is granted summary judgment as to claims related to these subsections.

To prevail on a claim for common law bad faith on the remaining issues in paragraph 47, the plaintiff must prove that the defendant "acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985) (emphasis added).) To prevail on a statutory bad faith claim, by contrast, a plaintiff need only prove that a benefit to which it was entitled under an insurance policy was unreasonably delayed or denied. *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (emphasis added); *see* C.R.S. § 10-3-1115(1)(a) ("[A] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."). If the statutory requirement is met, a plaintiff is entitled to receive a penalty payment of two times the benefit (in addition to the benefit itself), plus reasonable attorney's fees and costs. Colo. Rev. Stat. § 10-3-1116(1); *see Vaccaro*, 275 P.3d at 756 (noting that, because of the lesser liability burden and the onerous penalty provision, a statutory bad faith claim is "arguably . . . more financially threatening to the insurer than a traditional common law bad faith claim").

14

Importantly, under both the statute and the common law, Plaintiff must prove that Defendant acted unreasonably. In short, Plaintiff must prove that American Family delayed or denied payment of a covered benefit without a reasonable basis. Colo. Rev. Stat. § 10-3-1115(1)(a). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro*, 275 P.3d at 759. But, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* The burden to establish unreasonableness lies with Plaintiff. *See Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015).

"The reasonableness of the insurer's conduct is determined objectively and is based on proof of industry standards." *Schultz*, 429 P.3d at 847 (quoting *Goodson,* 89 P.3d at 415 (common law bad faith); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 994 (Colo. App. 2015) (statutory bad faith claim). Industry standards may be established through expert opinion or state law. *Goodson*, 89 P.3d at 415; *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). Further, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 847 (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)). *See Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.")

Plaintiff's claim appears to be that Justin Dawson, the first adjuster to inspect the roof after the claim was tendered, did not spend enough time inspecting the Yale property and did not give appropriate credence to Ms. DiRito's evaluation that the roofs' asphalt shingles were

15

damaged by cumulative hail and wind.[5]  Plaintiff alleges that, although the inspection by Mr. Dawson was timely, he was rude and, after only a cursory inspection, unreasonably committed to his finding that there was no hail damage to the roof shingles on any building.  However, while the characterizations about the first inspector's demeanor are neither accepted nor ratified by Defendant, these facts are not material because a second inspection by a new adjuster and an engineer paid for by Defendant was immediately performed.  In spite of that, Plaintiff makes the bald allegation, completely without any factual support, that both the second adjuster and the engineer were motivated simply to support the first adjuster, stating

> Dawson conducted a cursory inspection of the Yale properties, quickly taking photographs as he walked across the roof.  Dawson initially told Jonna and another DiRito Roofing contractor that there was no damage to the roof.  Jonna tried to point out the damage to Dawson, but he only responded with rude comments, even telling Jonna and DJ to go "thump yourselves."  Later, when Rivet Engineering came to inspect the Yale buildings, its representative seemed focused on finding information that conformed to Dawson's original conclusions rather than looking at actual hail.

(Resp. at 21.)

Unreasonable conduct cannot be established by virtue of a mere disagreement of value between the insured and insurer, and "[i]t is not sufficient for an insured to simply tender a different valuation [of the] claim[.]"  *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016).  In *Green Earth Wellness Ctr.*, Chief District Court Judge Marcia S. Krieger noted, "indeed, were the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially every

---

[5] At the time of the inspection, Ms. DiRito had not tendered a report nor a damage estimate for either repair or replacement of the roofs so her opinions would have been oral.

insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine." *Id.* (emphasis in original).

In a case remarkably similar to this one where the insurance company found, based on an engineering report, that alleged hail damage was not actually damage from hail but instead was largely due to age and mechanical means predating the subject hail storm event, District Judge Christine M. Arguello found that allegations consisting solely of conclusory statements based on a plaintiff's subjective beliefs are insufficient to establish unreasonable conduct. *5555 Boatworks Drive LLC v. Owners Ins. Co.*, Civil Action No. 16-cv-02749-CMA-MJW, 2017 WL 6361398, at *5 (D. Colo. Dec. 13, 2017). In another similar case, *Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-CV-01542-RM-KMT, 2018 WL 11182673, at *2 (D. Colo. July 9, 2018), District Judge Raymond P. Moore found at the Rule 12(b) stage that just because a defendant said "that defendant acted unreasonably or unfairly, does not make it so."

In this case, the insurer received the claim a little more than two months after the alleged hail event and within days had dispatched an adjuster to assess the damage. That adjuster found some hail damage to soft metal attachments and to a roof skylight but did not find hail damage to the asphalt shingles on any of the three roofs. Within a few weeks Defendant had paid fully on the uncontested damage, including replacement of soft metal venting, certain soffit damage and replacement of a damaged skylight and the roof surrounding the skylight. When Plaintiff objected to the adjuster used by American Family and to the adjuster's findings, American Family, without protest or delay, sent another adjuster and a privately retained engineer to inspect the premises more thoroughly, and a four hour inspection ensued. At each visit, Plaintiff's inspector was allowed to fully participate in the inspection. Again, the second adjuster

and the engineer found no hail damage to the asphalt tiles of the three roofs and attributed other noted imperfections to causes which were not covered by the insurance policy. Both inspections and evaluations of the property and payment were completed in less than a month from the date the claim was opened.

Plaintiff proffers no factual support or evidence that Mr. Peterson was improperly motivated by or even knew about Mr. Dawson's findings on the first inspection. Likewise, there is no support for Plaintiff 's assertion that "Defendant's adjuster and engineer failed to follow the industry guidelines for evaluating hail and wind claims. They based their decisions on faulty assumptions about the weather and refused to consider *any* evidence that contradicted their predetermined conclusion." Plaintiff points to no industry standards that Defendant violated.

Plaintiff points to one HAAG article regarding inspection of possible hail damage to asphalt shingles which suggests the asphalt tile should be "felt" or "touched" by the examiner. In fact, engineer Peterson was observed by Ms. DiRito touching the roof at least once as Ms. DiRito requested. (Aff. of Counsel, Ex. D, Deposition of Jonna DiRito, taken July 24, 2020 ("DiRito Depo.") at 221, 3-10.) Mr. Peterson simply disagreed with Ms. DiRito's assessment that certain blemishes in the asphalt tiles were caused by hail. The same is true of determinations of whether a blemish is a blister or a hail strike and whether "creasing" of a shingle is a result of a wind event or natural weathering. These are not disagreements over industry standards, they are disagreements over causation – the bread and butter of expert testimony.

In Colorado "the tort of bad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim[.]" *Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014) citing *Brodeur v. Am. Home Assurance Co.*, 169 P.3d

18

139, 147 (Colo. 2007). Here, the conduct[6] of the insurance company was exemplary upon learning of possible storm damage. The Defendant immediately sent an adjuster to the scene and, when the insured voiced objections to the first evaluation, the company, without objection, paid for a further and more complete examination by a more experienced adjuster and an engineer. Payment of undisputed amounts was quickly made, even prior to the second inspection. The company fully and completely explained the reasons for its decision which included reliance upon two inspection reports and the conclusions of the engineer set forth in a detailed report. When the Plaintiff, seven months later, submitted Ms. DiRito's rebuttal opinion, the company considered it immediately and within weeks had advised Plaintiff of the report's deficiencies and explained why it disagreed with Plaintiff's demand to replace the roofs on the three buildings.

An insurer unreasonably delays a claim when it has no "reasonable basis" for denying or delaying an insured's claim. The Tenth Circuit has held, there is "nothing unreasonable about [an insurance company's] denial of [a Plaintiff's] claim because it had a reasonable basis for its action." *Wagner,* 569 F. App'x at 580. *See also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro*, 275 P.3d at 759-60) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably."))

In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by any credible evidence. *See Bd. of Cnty. Comm'rs v. Auslaender,* 745 P.2d 999, 1001 (Colo. 1987) (interpreting "without a reasonable basis" in a

---

[6] As opposed to the validity of any coverage decision.

statute regarding the award of attorney fees in litigation against a public entity). Defendant has presented evidence that the insurance company's coverage position was supported by two independent adjuster inspections and reports and an engineering inspection and report. American Family also allowed for Ms. DiRito's opinions and input during both initial inspections and considered the DiRito Rebuttal when Plaintiff presented it months later. Plaintiff has been wholly unable to present any evidence that Defendant acted from a groundless position. As a matter of law, then, Plaintiff's common law and statutory bad faith claims fail and, along with them, the contract claim for breach of good faith and fair dealing. Therefore, Defendant is entitled to summary judgment as to those claims.

It is **ORDERED**

"Defendant American Family Mutual Insurance Company, S.I.'s, Motion for Summary Judgment" [Doc. No. 51] is **GRANTED IN PART** and **DENIED IN PART**.

The Motion is **DENIED** with respect to that part of Count 1, Breach of Contract, alleging failure of the Defendant to perform under the contract.

The Motion is **GRANTED** in all other respects. Defendant is granted summary judgment on the claim for breach of the duty of good faith and fair dealing under the contract, which is part of Count 1, and the entirety of Count 3.

Dated April 1, 2021.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge